# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| STARBUCKS CORPORATION,<br><br>                    Plaintiff,<br><br>       v.<br><br>WORKERS UNITED d/b/a<br>STARBUCKS WORKERS UNITED,<br>CHICAGO AND MIDWEST REGIONAL<br>JOINT BOARD, INC., and IOWA CITY<br>STARBUCKS WORKERS UNITED,<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Starbucks Corporation ("Starbucks") alleges the following against Defendants Workers United d/b/a Starbucks Workers United ("SBWU"), Chicago and Midwest Regional Joint Board, Inc. ("CMRJB"), and Iowa City Starbucks Workers United ("Iowa City SBWU") (collectively, "Defendants"):

## NATURE OF THE ACTION

1. Starbucks has built one of the most widely recognized brands in the world—it is an iconic global brand. Starting with a single coffeehouse in Seattle's Pike Place Market in 1971, Starbucks now serves nearly 100 million customers each week from a network of more than 41,000 coffeehouses operating in more than 90 countries. The name Starbucks, the circular logo, and the distinctive color scheme instantly remind people of the coffeehouses where they studied for dozens of exams, where they stop each morning for their favorite ritual, where they meet up with friends or family, or where they take a break in a welcoming, familiar venue that sits beyond home and work—the "third place." Starbucks has invested in both "the sip" and "the stay," creating a business that provides both excellent coffee and a welcoming, familiar environment

where many go for a sense of community or a moment of human connection, which has made Starbucks a household name. As a result of its longstanding use, extensive investment, commercial success, and worldwide presence and recognition, the Starbucks brand has become distinctive, embodying enormous goodwill and customer trust. The Starbucks brand signifies to global customers a single, consistent source of high-quality products, often provided in a trusted, welcoming, and familiar setting.

2. Although Starbucks would prefer a negotiated resolution of the present dispute, which concerns Defendants' misuse of the Starbucks brand, Defendants have decided to litigate the dispute in court. Thus, Starbucks had no choice but to file this case to protect the famous brand that it built over more than 50 years. No other company, organization, or person, including Defendants, should trade on Starbucks goodwill, or dilute the Starbucks brand, by selling merchandise that uses the Starbucks name or close variants of its logos. Starbucks brings this case to stop such activities that confuse customers and undermine the source-identifying function of its trademarks. Additionally, no other company, organization, or person, including Defendants, should use the Starbucks brand to wrongly suggest that Starbucks made, sponsored, or endorsed statements on social, political, or geopolitical issues, which is dilutive and harmful to the brand regardless of the position or issue. Starbucks also brings this case to stop such confusing associations. When a company builds one of the world's most widely recognized and valuable brands, it has both the need and the right to protect it, and this action does what any world-famous brand would do: it seeks to stop misuse of the Starbucks brand in ways that confuse customers.

3. Defendants in this case are labor unions that represent a small minority (about 5%) of all Starbucks partners (*i.e.*, baristas and other valued team members working in Starbucks coffeehouses)—but their being unions is irrelevant to the merits of the claims. Starbucks would

bring these claims regardless of the identity of the defendant because *no* other company, organization, or person has a right to misuse the Starbucks brand in a way that confuses consumers. Starbucks acknowledges that labor unions have a right to organize and a right to use an employer's name for protected union activities (*e.g.*, on picket signs or to identify the employer whose employees the union represents or with whom the union has a dispute).  But that is not a free pass to use, dilute, and damage a famous brand for any purpose, such as merchandise sales and statements on social, political, and geopolitical issues having nothing to do with protected union activities.  Starbucks likewise acknowledges that organizations and individuals have a right to free speech and to express their opinions.  But, again, that is not a free pass to confuse consumers by associating a famous brand with the opinions of others.  Defendants have caused harmful confusion by associating the Starbucks brand with their products, services, and statements on social, political, and geopolitical issues and, like any other organization, they must cease such confusing and harmful uses of the Starbucks brand.

4.     The claims here should come as no surprise to Defendants.  Starbucks has tried repeatedly to negotiate with Defendants to resolve these important brand-protection and consumer-confusion issues, but Defendants have insisted on litigation, despite ██████

████████████████████████████████████████

████████.[1]  ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] Starbucks redacts the above information because the parties agreed that it would be treated as confidential.  *See* Ex. A at 3.  Starbucks does not believe this information needs to be withheld from the public, but Starbucks understands Defendants want to keep it confidential, and thus Starbucks is filing a motion for leave to file under seal together with this complaint.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████

5.      ████████████████, Starbucks expected that Defendants would negotiate in good faith to limit any future use of the Starbucks brand.  But Defendants chose a different course.  The parties' foundational-framework negotiations were scheduled to resume on Tuesday, April 7, 2026, and on the eve of resuming negotiations (Friday, April 3), Defendants filed a declaratory-judgment action concerning their present uses of the Starbucks brand, seeking court approval that those uses do not constitute federal trademark infringement.  This was a bad-faith rush to the courthouse to forum shop and create negotiation "leverage."  During the three sets of foundational framework negotiation sessions from April 7 through May 28, Defendants have not responded to, or discussed, the Starbucks proposal regarding limitations on future use of the Starbucks brand.  Defendants did not even indicate willingness to consider brand-related issues

until May 27–28, but, in another about-face, Defendants then served Starbucks with the declaratory-judgment complaint on May 29.

6.      On May 29, it became clear that Defendants have no intention of engaging in good-faith negotiations to address their confusing misuse of the Starbucks brand.  Defendants, regrettably, chose litigation instead of negotiated resolution, and they have left Starbucks with no choice but to respond and protect its brand through this complaint.  In response to Defendants' premature declaratory-judgment lawsuit, Starbucks brings these claims to remedy harm caused by Defendants' misuse of the Starbucks brand and to establish boundaries on any future use to avoid further harm to the brand.  As explained below, Defendants have misused the Starbucks brand in two main ways, each of which has caused consumer confusion and dilution of the brand.

7.      *First*, Defendants have adopted and used the Starbucks name and slight variations of Starbucks logos as Defendants' own source-identifying branding on their websites, social media, and other public-facing channels.  These activities confusingly associate Starbucks with the goods, services, or content put out by Defendants, which has caused consumer confusion and diluted the value of the Starbucks brand.  Defendants' use of the Starbucks name and slight variants of its logos extends to the promotion and sale of merchandise directly to consumers through an online store.  Defendants' sales of merchandise, such as apparel, coffee mugs, and tumblers, improperly trade on Starbucks goodwill while diluting the brand.

8.      *Second*, Defendants have used the Starbucks name and slight variants of Starbucks logos to make and amplify public statements on social, political, and geopolitical issues unrelated to protected union activity, including at times of acute public attention.  The Starbucks brand has an almost unrivaled ability to command public attention, and Defendants' improper association of the Starbucks brand with their statements on these issues deprived Starbucks of the ability to

choose whether, when, and how it enters public discourse concerning them, and these statements also have diluted and damaged the Starbucks brand and its goodwill, both with customers and internally with partners.

9.     To be clear, Starbucks does not challenge the right of Defendants or their members to express their organization's or their individual opinions, nor does Starbucks bring this action to express a position on the opinions of Defendants or their members on any social, political, or geopolitical issue.  And it bears repeating that this case is not about protected labor-union-related uses of the Starbucks brand, for example, on signs used on a picket line.  Rather, like any other organization, entity, or person, Defendants cannot misuse the Starbucks brand in a way that creates consumer confusion as to source, sponsorship, affiliation, or endorsement and reduces the value of an iconic brand built over more than 50 years, especially as such misuse has nothing to do with protected union activities.  Defendants' misuse of the Starbucks brand must stop, and Defendants must take responsibility for past misuse that harmed one of the most widely recognized and valuable brands in the world.

**PARTIES**

10.    Starbucks is a corporation formed under the laws of the State of Washington, with its principal place of business located in Seattle, Washington.

11.    Workers United is an unincorporated association and an affiliate of Service Employees International Union ("SEIU").  According to its website, Workers United has regional joint boards and local unions located throughout the United States.

12.    On information and belief, SBWU is an affiliate, trade name, and/or agent of Workers United, and SBWU's leaders act as agents of and have received compensation from Workers United for their organizing and advocacy work on SBWU's behalf.  The SBWU website directs press inquiries regarding SBWU to a Workers United e-mail address,

-6-

starbucksmedia@workers-united.org.  SBWU maintains a website (https://sbworkersunited.org/) and social media accounts, including an X account (x.com/sbworkersunited), Facebook account (facebook.com/sbworkersunited), Instagram account (instagram.com/sbworkersunited) and TikTok account (tiktok.com/@sbworkersunited).

13.     On information and belief, CMRJB is an unincorporated association with its headquarters in Chicago, Illinois.  CMRJB is affiliated with and is a joint board of Workers United, and, on information and belief, possesses charter documents from Workers United.  CMRJB is affiliated with and oversees various local unions, including Iowa City SBWU.

14.     On information and belief, Iowa City SBWU is an unincorporated association located in Iowa City, Iowa.  It is affiliated with SBWU as a local chapter and is likewise a local union of Workers United, including as a local union within the geographic coverage range of, and oversight by, CMRJB.  National Labor Relations Board records indicate that certain employees of Starbucks location number 2855 in Iowa City filed an RC Petition on March 27, 2023, and the NLRB tallied ballots on May 11, 2023.  The records identify the associated labor union as "Chicago and Midwest Regional Joint Board, Workers United/SEIU," which the NLRB certified as the collective-bargaining representative of certain employees at Starbucks location number 2855 in Iowa City on May 18, 2023.  *See* Exs. B, C, and D.  On information and belief, Iowa City SBWU received charter documents from Workers United and SEIU, and became subject to the supervision and control of Workers United, SEIU, and CMRJB.

15.     On information and belief, Defendants are affiliated with each other, and with non-party SEIU, through formal and informal arrangements, including the Workers United constitution, an affiliation agreement between Workers United and SEIU, and Workers United and SEIU charter documents provided to SBWU and Iowa City SBWU.  Pursuant to the

Workers United constitution and structure described above, Workers United exercises supervisory authority and control over SBWU, Iowa City SBWU, and CMRJB; and CMRJB exercises supervisory authority and control over Iowa City SBWU.  The Workers United constitution vests the Workers United president with authority over all labels, trade names, trademarks, and other insignia for Workers United and its affiliates.  On information and belief, the Workers United president exercises supervisory authority and control over, and has authority to approve the form of, all insignia and logos of direct affiliates like SBWU, Iowa City SBWU, and CMRJB, including imitations and variations of the Starbucks Marks (as defined below), and uses of them.

16.     As affiliated entities, Iowa City SBWU, CMRJB, SBWU, Workers United, and SEIU support and share each other's messaging across their social media accounts, including by reposting, "quote" posting, or "liking" each other's posts on X, some of which include photos that contain the infringing names and logos at issue in this case.  Each of these entities maintains and promotes attributed social media accounts, including an X account:  https://x.com/WorkersUnited; https://x.com/SEIU;        https://x.com/CMRJB;        https://x.com/SBWorkersUnited;        and https://x.com/IowaCitySBWU.  Other local branches of SBWU similarly maintain affiliated social media accounts.

### JURISDICTION AND VENUE

17.     This action involves federal claims arising under the United States Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1051 *et seq.*, and the United States Copyright Act, 17 U.S.C. § 101 *et seq.*  This Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121(a).

18.     This Court has supplemental jurisdiction over the related state law claims in this action under 28 U.S.C. § 1367(a) as those claims are so related to the claims under federal law that they form part of the same case or controversy.

19.     The Court has personal jurisdiction over Defendants because the claims arise from and are related to Defendants' actions within Iowa or actions purposely directed at Iowa residents, including through coordination with Iowa-based affiliates, and the asserted claims are based on injuries that arise out of and relate to those actions.

20.     Venue is appropriate under 28 U.S.C. §§ 1391(b) and 1391(c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and at least one Defendant resides in this District.

## **FACTUAL BACKGROUND**

### I.     The Starbucks Business And Its Famous Brand

21.     Since 1971, when it opened its first coffeehouse in Seattle, Washington, Starbucks has grown to more than 41,000 coffeehouses worldwide in more than 90 countries.  Through decades of continuous use, extensive marketing, and substantial investment, Starbucks has developed significant goodwill in its brand and become one of the most widely recognized and beloved brands in the world.  That brand identity is anchored in Starbucks core mission:  "To be the premier purveyor of the finest coffee in the world, inspiring and nurturing the human spirit—one person, one cup and one neighborhood at a time."  That mission extends to partners and customers around the globe, who bring different backgrounds, experiences, and worldviews to Starbucks.

22.     Starbucks coffeehouses sell coffee, tea, and other food and beverages, as well as Starbucks-branded merchandise, such as coffee mugs and tumblers, glassware, coffee-related equipment, and other products and apparel.  These goods and services are offered under and promoted through the distinctive Starbucks-owned trademarks and service marks asserted in this action, which Starbucks extensively uses in commerce.  In coffeehouses, those marks are displayed prominently in connection with the customer experience, including on storefronts,

product packaging, in-store signage, and employee uniforms such as barista aprons, shirts, and hats. Starbucks merchandise likewise prominently displays the Starbucks marks asserted in this action (the "Starbucks Marks"), including the Siren Logo, the 40th Anniversary Siren Logo, and the STARBUCKS word mark shown below:

**Siren Logo**          **40th Anniversary Siren Logo**

    

**STARBUCKS Word Mark**

# STARBUCKS

23. Starbucks uses its marks in various channels of trade and in commerce throughout the United States and worldwide. Starbucks coffeehouses throughout the world conduct billions of transactions each year. Starbucks also promotes and sells its products and services on its website, Starbucks.com, and its mobile applications where the Starbucks Marks are displayed prominently. Further, Starbucks actively supports the communities served by its coffeehouses and in which it sources coffee and uses its marks in connection with activities and issues of interest in those communities.

24. In addition to direct sales, Starbucks sells its coffee and other products through authorized parties ("Authorized Sellers") throughout the United States. These Authorized Sellers include third-party websites like Amazon.com, bookstores, grocery stores, airports, restaurants,

and entertainment venues.  Starbucks licenses the Starbucks Marks to the Authorized Sellers under one or more license agreements.

25.     Regardless of the channel, Starbucks has robust brand standards concerning the use and display of the Starbucks Marks, including in guidelines and license agreement terms, and Starbucks broadly and actively polices any company's, organization's, or individual's use of the Starbucks Marks.  For example, Starbucks maintains detailed brand expression guides governing the use, appearance, and presentation of its marks, including specifications for design elements and designated color schemes—most prominently its signature green branding—to ensure consistent and recognizable use of the Starbucks Marks across all channels.  The Starbucks brand expression guidelines also set boundaries that allow for the use of seasonal color variations, for example, shades of orange used in connection with fall campaigns.  Starbucks devotes a significant amount of time, energy, and resources to protecting the Starbucks Marks because it is important to ensure consistency, and consistently satisfied customers, across numerous distribution channels around the globe.

26.     Starbucks also has invested billions of dollars in advertising and promotion of the Starbucks Marks over more than half a century.  For example, Starbucks spent more than $500 million on advertising in each of 2025, 2024, and 2023.  As a result of Starbucks extensively using its marks and its substantial investment in advertising and consumer exposure, the Starbucks Marks have achieved a high degree of recognition and fame.  Starbucks maintains official social media accounts, including, but not limited to, a Facebook page (www.facebook.com/Starbucks), an Instagram page (www.instagram.com/Starbucks), a TikTok account (www.tiktok.com/@starbucks), and a LinkedIn page (www.linkedin.com/company/Starbucks). All these platforms prominently feature the Starbucks Marks.

27. Brand studies routinely place Starbucks among the most recognized and valuable brands in the world. For example, the 2026 "Restaurants 25" report from an independent brand valuation consultancy, Brand Finance, ranked Starbucks the second most valuable brand in the world. As another example, BrandZ ranked Starbucks as the 42nd Most Valuable Global Brand in its 2026 study, placing Starbucks in the company of famous brands like American Express and Uber, and well ahead of other internationally recognized brands such as Spotify, Samsung, and KFC. Time Magazine also included Starbucks in its 2026 list of "America's Most Iconic Companies," ranking it 23rd between Target and Levi Strauss & Co. Starbucks also is the top-ranked food company on Fortune's list of the World's Most Admired Companies.

28. As a result of very significant investments over more than 50 years, deep connections with consumers, and high levels of quality, the Starbucks Marks are widely recognized by the general consuming public in the United States and around the world, and they have become famous and highly distinctive trademarks with an unmatched reputation of excellence, representing familiar and comfortable coffeehouses where hundreds of millions of consumers pass billions of hours each year.

## II. Exemplary Starbucks Registered Trademarks

29. For decades, Starbucks has continuously used its famous and highly distinctive marks, including the famous STARBUCKS word mark (used since 1971), as well as the famous Siren Logo (used since 1992) and the 40th Anniversary Siren Logo (used since 2011). Starbucks has used these famous marks in United States commerce in connection with a wide variety of goods and services to promote its brand and to identify its goods and services to customers.

30. The United States Patent and Trademark Office granted dozens of trademark registrations for the Starbucks Marks. The State of Iowa also has granted multiple trademark registrations for the Starbucks Marks. And the Starbucks Marks have been registered in over

180 countries around the world.  These registrations recognize the rights held by Starbucks in the world-famous Starbucks Marks.

31.     In addition to its registered rights, Starbucks has developed and owns extensive common law trademarks through continuous and substantially exclusive use of those marks in commerce throughout the United States.  As a result of its longstanding use, advertising, promotion, and consumer recognition, such marks have acquired distinctiveness and secondary meaning, and they are recognized by consumers as identifying Starbucks as the source or origin of branded goods and services.  These common law rights extend to the full scope for which Starbucks uses the marks, including mark variants, trade dress, and other indicia of source that consumers associate with Starbucks.

### A.     *Siren Logo*

32.     Starbucks has multiple registrations covering the Siren Logo.  These registrations include, but are not limited to: (i) four incontestable federal trademark registrations of the Siren Logo without a claimed color, *see* U.S. Reg. Nos. 1,815,938 (registered January 11, 1994), 3,298,945 (registered September 25, 2007), 3,673,335 (registered August 25, 2009), and 3,702,367 (registered October 27, 2009); (ii) three incontestable federal trademark registrations of the green, black, and white Siren Logo, *see* U.S. Reg. Nos. 1,815,937 (registered January 11, 1994), 2,266,351 (registered August 3, 1999), and 2,266,352 (registered August 3, 1999); (iii) another federal registration of the green, black, and white Siren Logo, *see* U.S. Reg. No. 6,783,025 (registered July 5, 2022); and (iv) two Iowa trademark registrations of the green, black, and white Siren Logo, *see* Iowa Corp. Nos. 768452 (filed November 17, 2023) and 768455 (filed November 17, 2023).

 

**U.S. Trademark Reg. No. 3,702,367**          **U.S. Trademark Reg. No. 6,783,025**

33.      Starbucks registrations of the Siren Logo apply to classes that cover, for example: "ground and whole bean coffee"; "coffee, tea, cocoa and espresso beverages"; "[d]airy-based food beverages"; "[f]ruit drinks and soft drinks containing fruit juices"; "housewares," including "coffee cups"; "retail store services featuring [coffee]"; and "restaurant, cafe and coffee house services."

34.      True and correct copies of federal registration certificates for the Siren Logo are included as Exhibit E.  And true and correct copies of Iowa state registration certificates for the Siren Logo are included as Exhibit F.

### B.      40th Anniversary Siren Logo

35.      Starbucks also has multiple registrations covering the 40th Anniversary Siren Logo. These registrations include, but are not limited to: (i) three incontestable federal registrations of the 40th Anniversary Siren Logo without a claimed color, *see* U.S. Reg. Nos. 4,415,862 (registered October 8, 2013), 4,538,053 (registered May 27, 2014), and 4,639,908 (registered November 18, 2014); (ii) another federal registration of the 40th Anniversary Siren Logo without a claimed color, *see* U.S. Reg. No. 6,805,224 (registered July 26, 2022); (iii) three incontestable federal registrations of the 40th Anniversary Siren Logo in the green and white color scheme, *see* U.S. Reg. Nos. 4,538,585 (registered May 27, 2014), 4,572,688 (registered July 22, 2014) and 4,635,864 (registered November 11, 2014); and (iv) two Iowa trademark registrations of the

-14-

40th Anniversary Siren Logo in the green and white color scheme, *see* Iowa Corp. Nos. 768453 (filed November 17, 2023) and 768454 (filed November 17, 2023).

  

**U.S. Trademark Reg. No. 4,639,908**      **U.S. Trademark Reg. No. 4,572,688**

36.     The registrations cover goods and services such as: "[g]round and whole bean coffee, cocoa, herbal and non-herbal tea, coffee, . . . and espresso beverages"; "fruit drinks and fruit juices"; "paper cups"; "housewares, kitchenware"; "[i]nsulated coffee and beverage cups, . . . mugs, [and] glassware"; "retail store services in the field of coffee"; "[r]estaurant, cafe, cafeteria, snack bar, coffee bar and coffee house, carry out restaurant, and take out restaurant services"; "T-shirts, polo shirts, sweatshirts, caps, hats, jackets, [and] aprons"; and "providing information . . . in the fields of news via communications networks."

37.     True and correct copies of federal registration certificates for the 40th Anniversary Siren Logo are included as Exhibit G.  And true and correct copies of Iowa state registration certificates for the 40th Anniversary Siren Logo are included as Exhibit H.

### C.     *STARBUCKS Word Mark*

38.     Starbucks also has multiple registrations covering the STARBUCKS word mark. These registrations include, but are not limited to: (i) nine incontestable federal registrations, *see* U.S. Reg. Nos. 1,444,549 (registered June 23, 1987), 2,073,104 (registered June 24, 1997), 2,086,615 (registered August 5, 1997), 3,235,732 (registered May 1, 2007), 2,180,760 (registered August 11, 1998), 2,189,460 (registered September 15, 1998), 2,176,974 (registered July 28,

1998), 1,452,359 (registered August 11, 1987), and 1,372,630 (registered November 26, 1985); and (ii) two Iowa trademark registrations, *see* Iowa Corp. Nos. 768451 (filed November 17, 2023) and 768456 (filed November 17, 2023).

39.     These registrations cover goods and services such as: "retail store services and distributorship services for coffee [and] tea"; "[r]estaurant, cafe and coffee house services"; "ready-to-drink coffee, ready-to-drink coffee based beverages"; "insulated coffee and beverage cups, . . . coffee cups, tea cups and mugs, beverage glassware"; "T-shirts, polo shirts, sweatshirts, caps, hats, jackets, [and] aprons"; and "coffee, tea, . . . herb tea, chocolate and cocoa."

40.     True and correct copies of federal registration certificates for the STARBUCKS word mark are included as Exhibit I.  And true and correct copies of Iowa state registration certificates for the STARBUCKS word mark are included as Exhibit J.

## III.     Defendants' Unauthorized Uses Of The Starbucks Brand Have Diluted The Value Of The Starbucks Marks, Infringed The Rights Of Starbucks, And Otherwise Harmed Starbucks

41.     Defendants have adopted the STARBUCKS word mark and various logos that incorporate, copy, or tweak or are slight variations of the Starbucks Marks (the "Accused Marks"). As discussed in more detail below, Defendants use the Accused Marks in at least three ways that infringe or dilute the Starbucks Marks:  (i) Defendants have adopted and used the Accused Marks as Defendants' own source-identifying branding on their websites, social media platforms, and other public-facing channels; (ii) Defendants have made widespread use of the Accused Marks as source identifiers on merchandise sold to consumers; and (iii) Defendants have used social media accounts branded with the Accused Marks to make and amplify public statements on social, political, and geopolitical issues unrelated to protected union activities.

### A. Defendants' Accused Marks Closely Resemble The Starbucks Marks And Trade Dress

42. SBWU and the other Defendants, without authorization from Starbucks, adopted for their own use the STARBUCKS word mark and various logos that closely resemble Starbucks Marks. For example, just two days before the voting deadline for the first SBWU unionization, certain Starbucks partners participated in a townhall meeting, which was confusingly described as a meeting for "Starbucks Workers." And to a similar point, in calling themselves "Starbucks Workers United" (by contrast, for example, with "Barista Solidarity" or "Labor Union of Starbucks Workers"), Defendants have created the mistaken belief, both with respect to consumers and Starbucks partners, that they are organizations that are sponsored or endorsed by Starbucks. Most members of the public are unfamiliar with "Starbucks Workers United" as a labor union, and instead believe it is an organization sponsored or endorsed by Starbucks because of Defendants' confusing use of the Starbucks name. Defendants' intentional decision to use the Starbucks name to suggest they have the express permission of Starbucks and to leverage the goodwill and notoriety of that name is one of the core reasons that much of the harm to Starbucks, described below, occurred.

43. In addition to the use of the STARBUCKS word mark, Defendants have used Accused Marks that share the overall impression of the Starbucks Marks and intentionally replicate multiple distinctive elements of the Starbucks proprietary branding (such as the examples shown below), including the use of predominantly black-and-white designs within concentric green-and-white circles; a green-and-white design of the Starbucks siren including offset circles; white (or light-colored) lettering in all capitals surrounding the circular border, including in a green band; each of the words separated by a five-pointed star the same color as the text; and, in some examples, a human-like figure with flowing hair, a siren tail, and a star crown. Designs comprising

these elements create the impression that the materials presented with them are affiliated with, sponsored by, or endorsed by Starbucks.

| **Accused Mark** | **Starbucks Mark** |
|:---:|:---:|
|  | |

44.     As the designer of the SBWU logos stated in an interview, the violations of federal law were intentional, or at least knowing.  According to the designer, Defendants' logos were "a derivation of the Starbucks siren," and the designer acknowledged that "there was some concern

whether that would expose us to legal liability."[2]  The designer also acknowledged a transition to the more recent logo (shown above at bottom-left) because it was considered to be slightly more "distinctive."  Nonetheless, SBWU continued to willfully infringe the Starbucks Marks by using the Accused Marks, including the representative Accused Marks shown above.

45.     Moreover, in addition to violating Starbucks trademark rights, Defendants' Accused Marks violate trade dress law.  Starbucks also owns protectable trade dress in the overall look and feel of its branding, which identifies Starbucks as the source of goods and services.  Starbucks trade dress includes the combination of several elements (also described above), including a green or black circular logo against a clean black, white, or green background; color palettes including greens, blacks, and whites; sans-serif typography surrounding a circular border with five-pointed stars between words; and, in particular, the use of those design elements on apparel and consumer goods.  This trade dress is distinctive, has acquired secondary meaning through decades of exclusive use and extensive promotion, and is recognized by consumers as identifying Starbucks as the source of its goods and services.  These non-functional elements serve no purpose other than to identify source, and Defendants' use of substantially similar visual elements further increases the likelihood of a mistaken belief by consumers as to source, sponsorship, or affiliation of the content offered under the marks.

**B.     Defendants' Use Of The Accused Marks On Social Media And In Marketing**

46.     Defendants have repeatedly used the Accused Marks as source identifiers, including across digital platforms such as their websites and social media accounts, which drive public engagement and direct users to SBWU's website and online "Merch Store," where Defendants promote and sell goods bearing the Accused Marks.  Through these activities,

---

[2] Cole Louison, *The Fist Meets the Frappuccino: How the Starbucks Union Created Their Pro-Labor Logo*, GQ (July 13, 2022), https://www.gq.com/story/starbucks-union-logo.

Defendants use the Accused Marks not only to communicate with the public, but also to attract attention, generate traffic, and facilitate commercial and fundraising activities that trade on the goodwill associated with the Starbucks Marks. SBWU has also prominently used, and continues to use, the Accused Marks on its social media accounts as an account identifier and in connection with social media posts to generate attention, solicit financial support, and sell merchandise. Following its formation in 2023, Iowa City SBWU similarly adopted and began to publicly use Accused Marks. Iowa City SBWU's social media accounts—including its X account— prominently display Accused Marks as account identifiers and in posts directed to the public. Other affiliates of Defendants have also adopted and publicly used Accused Marks in connection with their social media accounts. Social media accounts of Defendants and affiliates often comment on, react to, and repost content from each other, amplifying the uses of the Accused Marks across accounts.

47.     Defendants have used the Accused Marks pervasively for various publicity, advertising, fundraising, and promotional purposes, trading on the goodwill that Starbucks painstakingly built over more than five decades. Through these uses, Defendants have held themselves out to the public under branding that is likely to be perceived as affiliated with, sponsored by, or endorsed by Starbucks. Given the substantial similarities between the Accused Marks and the Starbucks Marks, the Accused Marks are likely to falsely convey to consumers that Starbucks is affiliated with, endorses, or sponsors posts or other statements that use the Accused Marks. Indeed, Defendants' use of the Accused Marks has undermined the source-identifying function of trademarks, causing consumer attribution to Starbucks of Defendants' publicity, advertising, fundraising, and promotional activities, as described in further detail in Section III.D, *infra*. In addition, Defendants' pervasive use of the Starbucks name and other Accused Marks is

also likely to impair, and already has impaired, the distinctiveness of the Starbucks Marks by blurring the unique association between those marks and Starbucks as a single source.

### C.     Defendants' Use Of The Accused Marks On Merchandise Sold To The Public

48.     As noted above, Defendants have used the Accused Marks in connection with the promotion and sale of SBWU merchandise.  For example, SBWU's website has a "Merch Store" that has sold, and continues to sell, merchandise featuring the Accused Marks (and prominently co-opting the Starbucks Marks and associated trade dress), including T-shirts, hats, and mugs.  The precise logo that has been featured on Defendants' merchandise has changed over time.



Logo Hat
$27.00



Logo Tee
$27.00



Logo Mug
$25.00

49.     Defendants also sell holiday-themed merchandise that intentionally mimics Starbucks own holiday-themed merchandise, such as the below example:

**Defendants' "Red Cup"**

**Starbucks Red Cup**





50.     Defendants' use of the Accused Marks in connection with this merchandise is not limited to the marks themselves but extends to the overall visual presentation of those products. For example, Defendants' apparel, buttons, drinkware, and other goods incorporate the same, non-functional elements (including circular logo formats, color schemes, typography, and product designs) that mirror the overall look and feel of Starbucks-branded merchandise.  These combined elements function together as source-identifying trade dress, and Defendants' use of substantially similar visual features further increases the likelihood that consumers will believe such merchandise is affiliated with, sponsored by, or endorsed by Starbucks, diluting the value of Starbucks trademarks, trade dress, and brand.

**D.     *Defendants' Use Of The Accused Marks To Make Statements Unrelated To Protected Union Activities***

51.     Defendants also have used the Starbucks name and other Accused Marks in connection with public statements about social, political, and geopolitical issues that have nothing to do with protected union activities.  Such uses have confused members of the public into thinking that Defendants' statements were made by Starbucks or at least were endorsed by or associated with Starbucks.  These statements have drawn intense attention because of the power of the Starbucks brand, and they have harmed the Starbucks brand and commercial reputation with customers, business associates, and partners.

52.     In several instances, the public attributed Defendants' statements concerning social, political, or geopolitical issues to Starbucks and directed outrage towards Starbucks rather than Defendants.   Defendants' misuse of the Starbucks Marks deals a direct blow to the source-identifying function of trademarks, creating confusion as to the source, sponsorship, affiliation, or endorsement of published opinions on social, political, and geopolitical issues. Whether, when, and how a company speaks on such issues is a multi-faceted and nuanced question

that requires careful consideration by the company, and only the company, of its customers, employees, business partners, and other stakeholders. Defendants' published statements on such issues—without Starbucks authorization and without allowing Starbucks to assess any of these considerations—and Defendants' association of Starbucks with their published opinions diluted and damaged the Starbucks brand.

53.     As just one example, in Fall 2023, Defendants made several statements relating to social, political, or geopolitical issues through their social media accounts that were interpreted by the public as supporting violence.  Among other things, SBWU reposted an image that was interpreted in that way by the public and made additional posts on the issue, including an image bearing two Accused Marks on a green background, which was reposted by Iowa City SBWU. Each publication, *which had nothing to do with protected union activities*, unnecessarily and prominently displayed the Starbucks name and/or the Accused Marks, creating a high likelihood that Defendants' statements would be interpreted as endorsed by Starbucks.  And that confusion actually happened.

54.     After Defendants' statements, politicians, customers, and other members of the public rebuked and singled out *Starbucks*, not Defendants.  Starbucks also was the target of public outrage based on the perception that Starbucks endorsed Defendants' statements.  Thus, this is not a case with a theoretical question of whether consumers attributed Defendants' statements, under the Starbucks name and other Accused Marks to Starbucks; consumers widely believed that Starbucks was responsible for or supported those statements.

55.     Moreover, the confusing association caused by Defendants has been challenging to correct.  When Starbucks released a public statement to clarify that Defendants' statements were not made or endorsed by Starbucks, there was further backlash because the clarification was

perceived as Starbucks taking a substantive position on the issue. This caused even more customer complaints and negative public statements that further harmed the Starbucks brand. These developments caused very significant dilution of and harm to the Starbucks brand, and were instigated by Defendants' misuse of the Starbucks name and other Accused Marks.

56. On October 13, 2023, Starbucks sent a letter to Workers United demanding that it "immediately cease and desist using the Starbucks name, logos, and other intellectual property, and variants of those, to identify [its] organization" because such use "misleads the public to erroneously associate the organization's stated positions with Starbucks." Defendants refused to cease using the Starbucks brand, forcing Starbucks to file a complaint in this Court on October 18, 2023 (subsequently amended on November 10, 2023) to prevent Defendants from continuing to misuse the Starbucks brand. Shortly thereafter, Workers United filed a complaint against Starbucks in the District Court for the Eastern District of Pennsylvania, seeking a declaration of non-infringement of the Starbucks trademarks and ironically seeking money for supposed "defamation."

57. On February 26, 2024, Starbucks and Workers United ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ ██ ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ ██ ████████████████

-25-

58. ████████████████████████████████████████████████

59. But despite Defendants' ████████████████████, its awareness of the confusing similarities between the Accused Marks and the Starbucks Marks, and its knowledge of the actual confusion and harm that has resulted from Defendants' use of the Accused Marks, Defendants have continued to use the Accused Marks in commerce and in connection with public statements on social, political, and geopolitical issues having nothing to do with protected union activities.

60. For example, Defendants have used the Accused Marks to comment on U.S. immigration policy and related issues. Defendants also have used the Accused Marks in conjunction with commentary on other armed conflicts. And Defendants have continued to use

the Accused Marks in connection with statements about the Middle East, including in 2025. This is all to say that what happened in 2023 was not an isolated event. Absent court intervention, Defendants will continue misusing the Starbucks name and other Accused Marks in connection with statements about a wide variety of issues, which (i) have nothing to do with protected union activities, and (ii) threaten further harm to the brand that Starbucks cultivated over more than 50 years. Indeed, they have asked a court for a declaratory judgment to that effect.

## IV.   Starbucks Is Compelled To File Suit To Protect Its Valuable Brand

61.   On January 31, 2025, the parties agreed to dismiss without prejudice the lawsuits that they filed in October 2023 to allow them time to negotiate a resolution.

62.   Although there were prolonged periods when Defendants did not engage in foundational-framework negotiations, the parties were poised to resume those negotiations in April 2026. On April 3, 2026, shortly before negotiations were scheduled to resume on April 7, 2026, Defendants re-filed their originally second-filed complaint, requesting a declaration that their current uses of the Starbucks brand are not unlawful. Defendants have not responded to the Starbucks proposals regarding negotiated parameters for Defendants' use of the Starbucks name, likeness, and brand in the framework collective bargaining agreement.

63.   Although Defendants indicated during the latest negotiation sessions, which occurred May 27–28, 2026, that they might be willing to discuss the brand issues, Defendants then reversed course and served Starbucks with their re-filed complaint on May 29. This made it clear that Defendants had no desire to engage in good-faith negotiations concerning use of the Starbucks brand. The dispute between the parties revived on that date, and because Defendants insist on litigation instead of negotiated resolution, Starbucks had no choice but to re-file its lawsuit with this Court to defend itself and protect its famous brand.

**CLAIMS FOR RELIEF**

**COUNT I**
**FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)**
**(Against All Defendants)**

64.     All the above and below allegations are incorporated by reference.

65.     Starbucks owns all rights, title, interest, and goodwill in the Starbucks Marks.  It holds valid and subsisting registrations in the Starbucks Marks, many of which are incontestable.

66.     The Starbucks Marks are famous and highly recognizable by the general consuming public.  The STARBUCKS word mark and variations of the Siren Logo have been used in commerce since Starbucks was founded over 50 years ago.  For example, the Siren Logo has been used in commerce since 1992 and the 40th Anniversary Siren Logo has been used in commerce since 2011.  Starbucks uses the Starbucks Marks in its coffeehouses, which sell coffee, tea, and other food and beverages, as well as on Starbucks-branded merchandise.  The Starbucks Marks are also used in Starbucks advertising of its products and services, including but not limited to, in advertisements, on its website where Starbucks also sells Starbucks-branded merchandise, and on Starbucks social media accounts.

67.     The Starbucks Marks enjoy widespread recognition due to the substantial investment Starbucks has made in advertising in addition to the large number of Starbucks coffeehouses and its presence in grocery stores and other channels of commerce throughout the United States.  The Starbucks Marks are famous, distinctive, and have acquired secondary meaning.  The Starbucks Marks were famous and widely recognized by the general consuming public before Defendants' actions complained of in this case and no later than 1992 (for both the STARBUCKS word mark and the Siren Logo) and no later than 2011 (for the 40th Anniversary Siren Logo).

68. Defendants' use of the Starbucks name and other Accused Marks has been and continues to be likely to cause consumer confusion, mistake, or deception as to the source, origin, sponsorship, affiliation, or endorsement of Defendants' statements and products. Defendants' use of the Starbucks name and other Accused Marks was intended to create an association with the Starbucks Marks and to capitalize on the success and popularity of the Starbucks Marks. And the public has, in fact, been confused by Defendants' use of the Starbucks name and other Accused Marks, and the public has incorrectly associated such uses with Starbucks.

69. Defendants have used and continue to use the Starbucks name and other Accused Marks in commerce in connection with commercial sales of goods and services and in connection with public statements regarding a variety of social, political, and geopolitical topics unrelated to protected union activities. Defendants' continued use of the Starbucks name and other Accused Marks poses an unacceptably high risk that the public will continue to incorrectly associate Defendants' goods, services, and statements with Starbucks and mistakenly attribute Defendants' statements to Starbucks.

70. Defendants' actions, as described above, are likely to cause (and have actually caused) the dilution of the Starbucks Marks by blurring and diminishing the distinctive qualities of those marks and by tarnishing the reputation that Starbucks worked hard to obtain.

71. Unless enjoined by this Court, Defendants will persist in their dilution, thereby causing Starbucks irreparable harm. Starbucks has no adequate remedy at law as to future uses, and greater injury will be inflicted upon Starbucks than Defendants if unlawful uses of the Starbucks brand are not enjoined by this Court. To be clear, Starbucks is not asking the Court to enjoin all use of the Starbucks name by Defendants, so long as Defendants use the Starbucks name in non-misleading ways and only in connection with protected union activities.

72. Defendants' past unlawful uses of the Starbucks name and other Accused Marks have caused harm to Starbucks. The harm to Starbucks included diminution of brand value and other damage to Starbucks goodwill and reputation; substantial costs to ameliorate such damage to the Starbucks brand and its goodwill and reputation; lost profits; and operational costs.

73. This case is an exceptional case under 15 U.S.C. § 1117(a), including because of Defendants' knowing, willful, and bad-faith dilution of the Starbucks name and other Starbucks Marks. Starbucks is entitled to all additional remedies for willful dilution and the status of this case as exceptional.

## COUNT II
## TRADEMARK DILUTION UNDER IOWA CODE § 548.113
### (Against All Defendants)

74. All the above and below allegations are incorporated by reference.

75. The Starbucks Marks are famous, distinctive, and have acquired secondary meaning among Iowa consumers.

76. The Accused Marks and their associated trade dress are confusingly similar to the Starbucks Marks and associated trade dress, as described above.

77. Without Starbucks authorization, and commencing after the Starbucks Marks became famous in Iowa, Defendants have used the Starbucks name and other Accused Marks in connection with Defendants' sales of goods and services and in connection with public statements regarding a variety of social, political, and geopolitical topics unrelated to protected union activities in a manner that diminishes the distinctive qualities of, and harms the reputation of, the Starbucks name and other Starbucks Marks.

78. Defendants' uses of the Starbucks name and other Accused Marks, as described above, constitute dilution of the distinctive quality of the Starbucks name and other Starbucks Marks by blurring and by tarnishment in violation of Iowa Code § 548.113.

79. Unless enjoined by this Court, Defendants will persist in their dilution, thereby causing Starbucks irreparable harm. Starbucks has no adequate remedy at law as to future uses, and greater injury will be inflicted upon Starbucks than Defendants if unlawful uses of the Starbucks brand are not enjoined by this Court. To be clear, Starbucks is not asking the Court to enjoin all use of the Starbucks name by Defendants, so long as Defendants use the Starbucks name in non-misleading ways and only in connection with protected union activities.

80. Defendants' past unlawful uses of the Starbucks name and other Accused Marks have caused harm to Starbucks. The harm to Starbucks included diminution of brand value and other damage to the goodwill and reputation Starbucks has obtained; substantial costs to ameliorate such damage to the Starbucks brand and its goodwill, and reputation; lost profits; and operational costs.

81. Defendants' acts of dilution by blurring and by tarnishment have been willful, deliberate, and in bad faith. Starbucks is entitled to all other available remedies because of such willful, deliberate, and bad faith harm to the Starbucks brand.

**COUNT III**
**FEDERAL TRADEMARK AND TRADE DRESS INFRINGEMENT**
**UNDER 15 U.S.C. §§ 1114, 1125(a)**
**(Against All Defendants)**

82. All the above and below allegations are incorporated by reference.

83. Starbucks is the owner of valid and subsisting registrations in the Starbucks Marks, many of which are incontestable.

84. Defendants' use in commerce of the Accused Marks, which are confusingly similar to the Starbucks Marks, without the authorization or consent of Starbucks, including in connection with posting on various social media accounts, public advocacy, selling goods, and soliciting

funds, is likely to cause and has caused consumer confusion, mistake, or deception as to the source, origin, affiliation, or endorsement of Defendants' statements, goods, products, or services.

85. Defendants' use of the Accused Marks, as described above, constitutes infringement of the Starbucks Marks under 15 U.S.C. § 1114.

86. Additionally, Starbucks has protectable trade dress for the advertisement, promotion, display, shipment, offering for sale, sale, and distribution through commerce of merchandise and services. Defendants' merchandise utilizes the combination of several non-functional elements that constitute protectable Starbucks trade dress. Defendants' use of Starbucks trade dress is likely to cause confusion, mistake, or deceive as to the origin, sponsorship, or approval of Defendants' merchandise and other commercial activities in violation of 15 U.S.C. § 1125(a)(1).

87. Defendants were aware of the Starbucks Marks and trade dress, and Defendants committed infringement willfully and with the intent to appropriate and trade upon the goodwill and reputation that Starbucks previously established and that are associated with the Starbucks Marks.

88. Unless enjoined by this Court, Defendants will persist in their infringement, thereby causing Starbucks irreparable harm. Starbucks has no adequate remedy at law as to future infringement, and greater injury will be inflicted upon Starbucks than Defendants if unlawful uses of the Starbucks brand are not enjoined by this Court. To be clear, Starbucks is not asking the Court to enjoin all use of the Starbucks name, so long as Defendants use the Starbucks name in non-misleading ways and only in connection with protected union activities.

89. Defendants' past infringement has caused harm to Starbucks. The harm to Starbucks included diminution of brand value and other damage to its goodwill and reputation;

substantial costs to ameliorate such damage to its brand, goodwill, and reputation; lost profits; and operational costs.

90.     This case is an exceptional case under 15 U.S.C. § 1117(a), including because of Defendants' knowing, willful, and bad-faith infringement.  Starbucks is entitled to all additional remedies for willful infringement and the status of this case as exceptional.

91.     Destruction of articles is authorized by 15 U.S.C. § 1118.

**COUNT IV**
**TRADEMARK INFRINGEMENT UNDER IOWA CODE § 548.112**
**(Against All Defendants)**

92.     All the above and below allegations are incorporated by reference.

93.     Starbucks is the owner of valid and subsisting registrations, including Iowa state registrations, in the Starbucks Marks.

94.     Defendants' use in commerce of the Accused Marks, which are confusingly similar to the Starbucks Marks, without the authorization or consent of Starbucks, including in connection with posting on various social media accounts, public advocacy, selling goods, and soliciting funds, is likely to cause and has caused consumer confusion, mistake, or deception as to the source, origin, affiliation, or endorsement of Defendants' statements, goods, products, or services.

95.     Defendants' use of the Accused Marks, as described above, constitutes infringement of the Starbucks Marks under Iowa Code § 548.112.

96.     Defendants were aware of the Starbucks Marks, and Defendants committed infringement willfully and with the intent to appropriate and trade upon the goodwill and reputation that Starbucks previously established and that are associated with the Starbucks Marks.

97.     Unless enjoined by this Court, Defendants will persist in their infringement, thereby causing Starbucks irreparable harm.  Starbucks has no adequate remedy at law as to future infringement, and greater injury will be inflicted upon Starbucks than Defendants if unlawful uses

of the Starbucks brand are not enjoined by this Court. To be clear, Starbucks is not asking the Court to enjoin all use of the Starbucks name, so long as Defendants use the Starbucks name in non-misleading ways and only in connection with protected union activities.

98. Defendants' past infringement has caused harm to Starbucks. The harm to Starbucks included diminution of brand value and other damage to its goodwill and reputation; substantial costs to ameliorate such damage to its brand, goodwill, and reputation; lost profits; and operational costs.

99. This case is an exceptional case under Iowa Code § 548.112, including because of Defendants' knowing, willful, and bad-faith infringement. Starbucks is entitled to all additional remedies for willful infringement and the status of this case as exceptional.

100. Destruction of articles is authorized by Iowa Code § 548.114.

**COUNT V**
**FALSE DESIGNATION OF ORIGIN AND FALSE ASSOCIATION**
**UNDER 15 U.S.C. §§ 1125(a)**
**(Against All Defendants)**

101. All the above and below allegations are incorporated by reference.

102. Starbucks is the owner of valid and subsisting registrations in the Starbucks Marks, many of which are incontestable.

103. Defendants' use of the Starbucks name and other Accused Marks without the authorization of Starbucks, including in connection with public statements, selling goods, and soliciting funds, is likely to cause and has caused consumer confusion, mistake, or deception as to the source, origin, affiliation, or endorsement of Defendants' goods, services, or statements.

104. Defendants' acts, as described above, constitute false designation of origin and false association in violation of 15 U.S.C. § 1125(a).

105. Defendants engaged in such acts with the intent to deceive, mislead, and/or confuse relevant consumers as to whether there was an affiliation, connection, or association between Defendants and Starbucks. Defendants' conduct has actually deceived relevant consumers and/or has a tendency to deceive a substantial number of actual and/or potential consumers.

106. Unless enjoined by this Court, Defendants will persist in their creation of false designation of origin and false association, thereby causing Starbucks irreparable harm. Starbucks has no adequate remedy at law as to future uses, and greater injury will be inflicted upon Starbucks than Defendants if unlawful uses of the Starbucks brand are not enjoined by this Court. To be clear, Starbucks is not asking the Court to enjoin all use of the Starbucks name by Defendants, so long as Defendants use the Starbucks name in non-misleading ways and only in connection with protected union activities.

107. Defendants' past unlawful creation of false designation of origin and false association have caused harm to Starbucks. The harm to Starbucks included diminution of brand value and other damage to its goodwill and reputation; substantial costs to ameliorate such damage to its brand, goodwill, and reputation; lost profits; and operational costs.

108. This is an exceptional case under 15 U.S.C. § 1117(a), including because Defendants knowingly, willfully, and in bad faith created false impressions of association and origin. Starbucks is entitled to all additional remedies for that willful misconduct and the status of this case as exceptional.

109. Destruction of articles is authorized by 15 U.S.C. § 1118.

**COUNT VI**
**COMMON LAW TRADEMARK INFRINGEMENT**
**AND UNFAIR COMPETITION**
**(Against All Defendants)**

110. All the above and below allegations are incorporated by reference.

111. Starbucks is the owner of the Starbucks Marks identified herein. Starbucks owns all rights, title, interest, and goodwill in the Starbucks Marks.

112. Defendants' use in commerce of the Accused Marks without the authorization or consent of Starbucks, such as in connection with posting on various social media accounts, public advocacy, soliciting funds, and selling goods, is likely to cause and has caused consumer confusion, mistake, or deception as to the source, origin, affiliation, or endorsement of Defendants' statements, goods, products, or services.

113. Defendants' acts constitute trademark infringement, false designation of origin, false affiliation, and unfair competition in violation of Iowa common law.

114. Defendants engaged in such acts with the intent to deceive, mislead, and/or confuse relevant consumers as to whether there was an affiliation, connection, or association between Defendants and Starbucks. And Defendants succeeded in doing so. Defendants' conduct has actually deceived relevant consumers and/or has a tendency to deceive a substantial number of actual and/or potential consumers.

115. Unless enjoined by this Court, Defendants will persist in their unlawful conduct, thereby causing Starbucks irreparable harm. Starbucks has no adequate remedy at law as to future uses, and greater injury will be inflicted upon Starbucks than Defendants if unlawful uses of the Starbucks brand are not enjoined by this Court. To be clear, Starbucks is not asking the Court to enjoin all use of the Starbucks name by Defendants, so long as Defendants use the Starbucks name in non-misleading ways and only in connection with protected union activities.

116. Defendants' past unlawful conduct has caused harm to Starbucks. The harm to Starbucks included diminution of brand value and other damage to its goodwill and reputation;

substantial costs to ameliorate such damage to its brand, goodwill, and reputation; lost profits; and operational costs.

117. Defendants' conduct has been willful, deliberate, and carried out in bad faith. Starbucks is entitled to all other available remedies because of such willful, deliberate, and bad faith harm to the Starbucks brand.

**COUNT VII**
**CONTRIBUTORY AND/OR VICARIOUS**
**TRADEMARK DILUTION**
**(Against Workers United d/b/a SBWU, and CMRJB)**

118. All the above and below allegations are incorporated by reference.

119. Defendants Workers United d/b/a SBWU and CMRJB are, on information and belief, directing or controlling the above-described activities of Iowa City SBWU, or at the very least, are benefiting from such acts. On information and belief, Defendants, at all relevant times, possessed the right and ability to control and/or supervise the infringing actions and conduct of others, including but not limited to Iowa City SBWU, and Defendants received a direct financial benefit from the actions of Iowa City SBWU, as alleged above.

120. The dilution of the Starbucks Marks by Iowa City SBWU has thus been directed by, and under the control or authority of, Defendants Workers United d/b/a SBWU and CMRJB, and those Defendants are vicariously liable for such dilution. The harm to Starbucks for which those Defendants are vicariously liable included diminution of brand value and other damage to its goodwill and reputation; substantial costs to ameliorate such damage to its brand, goodwill, and reputation; lost profits; and operational costs.

121. Unless enjoined by this Court, Defendants Workers United d/b/a SBWU and CMRJB will continue to take steps, or fail to take steps, that cause Starbucks to suffer further irreparable harm. To be clear, Starbucks is not asking the Court to enjoin all use of the

Starbucks name by Defendants, so long as Defendants use the Starbucks name in non-misleading ways and only in connection with protected union activities.

122. This is an exceptional case under 15 U.S.C. § 1117(a), including because Defendants knowingly, willfully, and in bad faith diluted the Starbucks Marks. Starbucks is entitled to all additional remedies for willful dilution and the status of this case as exceptional.

123. Destruction of articles is authorized by 15 U.S.C. § 1118.

**COUNT VIII**
**CONTRIBUTORY AND/OR VICARIOUS**
**TRADEMARK INFRINGEMENT**
**(Against Workers United d/b/a SBWU and CMRJB)**

124. All the above and below allegations are incorporated by reference.

125. Defendants Workers United d/b/a SBWU and CMRJB are, on information and belief, directing or controlling the infringing activities of Iowa City SBWU, or are benefiting by such acts. On information and belief, Defendants Workers United d/b/a SBWU and CMRJB, at all relevant times, possessed the right and ability to control and/or supervise the infringing actions and conduct of others, including but not limited to Iowa City SBWU, as alleged above.

126. On information and belief, Defendants Workers United d/b/a SBWU and CMRJB received a direct financial benefit from the infringing actions and conduct of others, including but not limited to Iowa City SBWU, as alleged above.

127. Based on the above, the infringement of the Starbucks Marks and Starbucks trade dress by Iowa City SBWU has been directed by, and under the control or authority of, Defendants Workers United d/b/a SBWU and CMRJB. Workers United d/b/a SBWU and CMRJB have contributorily infringed, or are vicariously liable for the infringement of, the Starbucks Marks by intentionally inducing Defendant Iowa City SBWU to infringe the Starbucks Marks and/or by continuing to permit, direct, or facilitate the supply and use of the Accused Marks to Defendant

Iowa City SBWU whom it knows or has reason to know is engaging in infringement of the Starbucks Marks.

128. The infringement of the Starbucks Marks and Starbucks trade dress by Iowa City SBWU has thus been directed by, and under the control or authority of, Defendants Workers United d/b/a SBWU and CMRJB, and those Defendants are vicariously liable for such infringement. The harm to Starbucks for which those Defendants are vicariously liable included diminution of brand value and other damage to its goodwill and reputation; substantial costs to ameliorate such damage to its brand, goodwill, and reputation; lost profits; and operational costs.

129. Unless enjoined by this Court, Defendants Workers United d/b/a SBWU and CMRJB will continue to take steps, or fail to take steps, that cause Starbucks to suffer further irreparable harm. To be clear, Starbucks is not asking the Court to enjoin all use of the Starbucks name by Defendants, so long as Defendants use the Starbucks name in non-misleading ways and only in connection with protected union activities.

130. This is an exceptional case under 15 U.S.C. § 1117(a), including because Defendants knowingly, willfully, and in bad faith infringed the Starbucks Marks. Starbucks is entitled to all additional remedies for willful infringement and the status of this case as exceptional.

131. Destruction of articles is authorized by 15 U.S.C. § 1118.

**COUNT IX**
**COPYRIGHT INFRINGEMENT**
**UNDER 17 U.S.C. § 101 *et seq.***
**(Against All Defendants)**

132. All the above and below allegations are incorporated by reference.

133. As explained above in Paragraph 17, this action involves federal claims arising under the United States Copyright Act, which provides federal courts with exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338.

134.    As relevant here, Starbucks at all relevant times has been the exclusive owner of two copyrighted works (the "Starbucks Works").  At all relevant times, Starbucks has owned United States Copyright Reg. No. VA 875-932 for the Starbucks Siren Logo.  A true and correct copy of the copyright registration certificate for the Starbucks Siren Logo is included as Exhibit K.  In addition, at all relevant times, Starbucks has owned United States Copyright Reg. No. VA 1-768-520 for the Starbucks 40th Anniversary Siren Logo.  A true and correct copy of the copyright registration certificate for that work is included as Exhibit L.

135.    As owner of the Starbucks Works, Starbucks enjoys exclusive rights with respect to the Starbucks Works, including the exclusive right to reproduce, distribute, display, and create derivative works.

136.    Without authorization from Starbucks, Defendants have copied, reproduced, adapted, or created works derivative of the Starbucks Works.  And Defendants have continued to copy, reproduce, adapt, and/or create works derivative of the Starbucks Works without authorization from Starbucks.

137.    As shown above in Paragraph 43, the similarities between the Accused Marks and the Starbucks Works are substantial.  Among other things, they share combinations of the following elements:  the same siren (twin-tailed mermaid) in the center wearing the same star crown, with similar facial and body features, and the same waves of hair framing the entire body from the crown to the bottom of the image; they share the same color schemes and shades (white and green; or green, white, and black); the 40th Anniversary Logo and the corresponding Accused Marks share the same sans-serif font in all capital lettering with five-pointed stars separating each word on the logo; and they share similar proportions and compositions.

138. These similarities are not coincidental—Defendants intended to, and did, create derivatives of the Starbucks Works. As explained above in Paragraph 44, the designer of Defendants' infringing logos admitted in an interview that Defendants directly copied the Starbucks Works. He stated: "[o]riginally we had a derivation of the Starbucks siren with a solidarity fist." However, the designer of Defendants' infringing logos conceded, "there was some concern whether that would expose us to legal liability."[3] On information and belief, Defendants' copying of the Starbucks Marks was and is intentional. At the very least, Defendants had access to the Starbucks Works, and the Accused Works are substantially similar to the Starbucks Works.

139. Defendants have used the Starbucks Works, or derivative works based on the Starbucks Works, in commerce, such as in connection with selling goods, soliciting funds, and posting on various social media accounts.

140. Defendants' unauthorized copying, reproducing, displaying, and use of the materials protected by Starbucks Works, or derivative works based on the Starbucks Works, without consent or authorization constitutes direct copyright infringement in violation of 17 U.S.C. §§ 106, § 501.

141. Defendants' copyright infringement has caused, and will continue to cause, harm to Starbucks. Unless enjoined by this Court, Defendants will continue to take steps, or fail to take steps, that cause Starbucks to suffer further irreparable harm.

142. Defendants' infringement was committed willfully within the meaning of 17 U.S.C. § 504(c)(2). Starbucks is entitled to all additional remedies for willful copyright infringement.

---

[3] Cole Louison, *The Fist Meets the Frappuccino: How the Starbucks Union Created Their Pro-Labor Logo*, GQ (July 13, 2022), https://www.gq.com/story/starbucks-union-logo.

**COUNT X**
**CONTRIBUTORY AND/OR VICARIOUS**
**COPYRIGHT INFRINGEMENT**
**(Against All Defendants)**

143.    All the above allegations are incorporated by reference.

144.    Defendants are, on information and belief, directing or controlling the above-described activities, including copyright infringement, of individuals who designed logos for SBWU (or its local chapters) that infringe the Starbucks Works, or at the very least, are benefiting from such acts.  On information and belief, Defendants, at all relevant times, possessed the right and ability to control and/or supervise the infringing actions and conduct of others, including but not limited to individuals who designed logos for SBWU (or its local chapters) that infringe the Starbucks Works.

145.    On information and belief, Defendants received a direct financial benefit from the actions of individuals who designed logos for SBWU (or its local chapters) that infringe the Starbucks Works, as alleged above.

146.    The infringement of the Starbucks Works by individuals who designed logos for SBWU (or its local chapters) that infringe the Starbucks Works has thus been directed by, and under the control or authority of, Defendants, and Defendants are vicariously liable for those individuals' copyright infringement, including the harm to Starbucks caused by those individuals' copyright infringement.

147.    Unless enjoined by this Court, Defendants will continue to take steps, or fail to take steps, that cause Starbucks to suffer further irreparable harm.

148.    Upon information and belief, Defendants knew or should have known that SBWU logos directly infringe the Starbucks Works.  Defendants' infringement was committed willfully

-41-

within the meaning of 17 U.S.C. § 504(c)(2).  Starbucks is entitled to all additional remedies for

willful copyright infringement.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Starbucks hereby demands a

trial by jury of all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Starbucks prays for the following relief:

A.      Judgment that Defendants diluted and/or infringed the Starbucks Marks;

B.      Judgment that Defendants infringed the Starbucks trade dress;

C.      Judgment that Defendants infringed the Starbucks Works;

D.      Damages in an amount to be proven at trial;

E.      Disgorgement of Defendants' profits;

F.      Enhanced damages under 15 U.S.C. §§ 1117(a) and 1125(c)(5), Iowa Code §§ 548.113 and 548.114, and 17 U.S.C. § 504;

G.      An order that Defendants are jointly and severally liable for all damages and awards of profits;

H.      An award of attorneys' fees, costs, and pre-judgment and post-judgment interest;

I.      An injunction prohibiting Defendants and each of their agents from committing further infringing and diluting acts, including an injunction that prohibits all use of the Starbucks name, Starbucks Marks, Accused Marks, variants of those marks, except for uses of the Starbucks name that identify the labor union in a non-misleading way and only in connection with protected union activities;

J.      An injunction prohibiting further infringement of the Starbucks Works, including through the creation of further derivative works;

K.      An order that Defendants, pursuant to 15 U.S.C. § 1116, file with the Court and serve on counsel for Starbucks within ten (10) days after entry of judgment, a written report under oath setting forth in detail the manner in which they have complied with the injunction ordered by the Court;

-43-

L.   An order that Defendants destroy all articles infringing or diluting the Starbucks Marks or Starbucks Works pursuant to 15 U.S.C. § 1118, Iowa Code §§ 548.113 and 548.114, the common law of Iowa, and 17 U.S.C. § 503; and

M.   Such other and further relief as the Court deems just and proper.

Dated: June 18, 2026                    Respectfully submitted,


OF COUNSEL:                            /s/ *Jeffrey D. Harty*
                                       Jeffrey D. Harty
Sharon L. Nelles                       Lynn C. Herndon
(*pro hac vice* forthcoming)           NYEMASTER GOODE, P.C.
Dustin F. Guzior                       700 Walnut Street, Suite 1300
(*pro hac vice* forthcoming)           Des Moines, Iowa 50309
Alexander N. Gross                     T: (515) 283-3100
(*pro hac vice* forthcoming)           E: jharty@nyemaster.com
SULLIVAN & CROMWELL LLP                E: lherndon@nyemaster.com
125 Broad Street
New York, New York 10004               *Counsel to Plaintiff Starbucks Corporation*
Tel: (212) 558-4000
Fax: (212) 558-3588
nelless@sullcrom.com
guziord@sullcrom.com
grossa@sullcrom.com


Aviv S. Halpern
(*pro hac vice* forthcoming)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Tel: (650) 461-5600
Fax: (650) 461-5700
halperna@sullcrom.com